**HOTEL EMPLOYEES & RESTAURANT EMPLOYEES UNION, LOCAL 5, AFL—CIO, Plaintiff,**

v.

**HONOLULU COUNTRY CLUB, Defendant.**

and

**Honolulu Country Club, Counterclaimant,**

v.

**Hotel Employees & Restaurant Employees Union, Local 5, AFL—CIO, Counterclaim Def.**

**Civ. No. 99–317 ACK.**

United States District Court, D. Hawaii.

Dec. 28, 1999.

---

Dale L. Bennett, Honolulu, HI, for Hotel Employees and Restaurant Employees, Local 5, AFL—CIO.

Roman F. Amaguin, Torkildson Katz Fonseca Jaffe & Moore, Honolulu, HI, for Honolulu Country Club.

### ORDER GRANTING HONOLULU COUNTRY CLUB'S MOTION FOR SUMMARY JUDGMENT

KAY, District Judge.

### BACKGROUND

On April 30, 1999, Plaintiff Hotel Employees and Restaurant Employees, Local 5, AFL—CIO ("the Union") filed a complaint in federal court to vacate an arbitrator's decision and award. The instant case stems from a dispute between Lee Murata, an employee of Honolulu Country Club and a shop steward for the Union, and Honolulu Country Club ("HCC"). HCC disciplined Murata for soliciting employees to sign Union cards during one of his breaks from work.[1] Section 3.01 of the Collective Bargaining Agreement ("CBA") states:

> The Employer will not attempt to intimidate, or coerce any employee into refusing to join the Union, and will not discriminate against any employee because

of his membership in the Union, or for legitimate Union activity; provided, however, that such activity shall not be conducted during working hours, or interfere with the conduct of the Employer's operation.

HCC's Concise Statement of Facts, Aug. 31, 1999, Exh. B, § 3.01.

On April 28, 1999, Arbitrator Edward J. Parnell ("the arbitrator") issued a decision concluding that the phrase "working hours" included paid meal breaks and that Murata therefore violated the CBA by soliciting other employees during his working hours. The arbitrator found the CBA's language to be clear and unambiguous, and further found this conclusion reinforced by an exchange between the Union's representative and the Employer's representative. In response to the Union representative's question whether HCC included paid meal breaks as working time, HCC's representative answered "yes, otherwise we end up 'a little pregnant.'" *See id.*, Exh. A, at 8.

In reaching this decision, the arbitrator distinguished the Supreme Court's holding in *NLRB v. Magnavox Co.*, 415 U.S. 322, 94 S.Ct. 1099, 39 L.Ed.2d 358 (1974). In *Magnavox*, the Supreme Court held that a union may not waive the right of its employees to conduct union business on an employer's premises, and that a rule completely prohibiting union solicitation during non-work time was invalid. *See Magnavox*, 415 U.S. at 325, 94 S.Ct. 1099 ("The place of work is a place uniquely appropriate for dissemination of views concerning the bargaining representative and the various options open to the employees. So long as the distribution is by employees to employees and so long as the in-plant solicitation is on nonworking time, banning of that solicitation might seriously dilute § 7 rights"). Relying on the reasoning in *NLRB v. United Technologies Corp.*, 706 F.2d 1254, 1263–64 (2nd Cir.1983), which held that a union could negotiate limita-

---

1. HCC suspended Murata for three days.

tions on the time and place of union solicitation so long as union solicitation was not completely banned, the arbitrator found that employees were permitted to conduct Union activities before or after their work shifts, and that the "ban is only on activities taking place once the employees have punched in and until they have punched out." HCC's Concise Statement of Facts, Aug. 31, 1999, Exh. A, at 9.

In response to the Union's complaint to vacate the arbitrator's decision and award, HCC filed an answer and counterclaim on May 24, 1999. On August 31, 1999, HCC filed a motion for summary judgment. On December 8, 1999, the Union filed its opposition to the motion, and HCC filed its reply on December 16, 1999. The Court held a hearing on the instant motion on December 27, 1999.

### STANDARD OF REVIEW

Summary judgment shall be granted where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c). The standard for summary adjudication is the same. *See State of Cal. v. Campbell*, 138 F.3d 772, 780 (9th Cir. 1998). One of the principal purposes of the summary judgment procedure is to identify and dispose of factually unsupported claims and defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The United States Supreme Court has declared that summary judgment must be granted against a party who fails to demonstrate facts to establish an element essential to his case where that party will bear the burden of proof of that essential element at trial. *See id.* at 322, 106 S.Ct. 2548. "If the party moving for summary judgment meets its initial burden of identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact [citations omitted], the nonmoving party may not rely on the mere allegations in the pleadings in order to

preclude summary judgment." *T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987).

Rather, Rule 56(e) requires that the nonmoving party set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial. *See id.* at 630. At least some "significant probative evidence tending to support the complaint" must be produced. *Id.* Legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment. *See British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir.1978).

The standard for a grant of summary judgment reflects the standard governing the grant of a directed verdict. *See Eisenberg v. Ins. Co. of North America*, 815 F.2d 1285, 1289 (9th Cir.1987) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Thus, the question is whether "reasonable minds could differ as to the import of the evidence." *Anderson*, 477 U.S. at 250–51, 106 S.Ct. 2505.

The Ninth Circuit has established that "[n]o longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment." *California Architectural Bldg. Products, Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir.1987). Moreover, the United States Supreme Court has stated that "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Indeed, "if the factual context makes the nonmoving party's claim *implausible*, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *Franciscan Ceramics*, 818 F.2d at 1468 (emphasis in original) (citing

*Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348). Of course, all evidence and inferences to be drawn therefrom must be construed in the light most favorable to the nonmoving party. *See T.W. Elec. Serv.,* 809 F.2d at 630–31.

## DISCUSSION

Emphasizing the high degree of deference that must be shown to an arbitrator's decision, HCC asks the Court to grant its motion for summary judgment. In its opposition, the Union argues that "the arbitrator's decision ... flies in the face of applicable law" and does not deserve any deference. Union's Opposition, Dec. 8, 1999, at 6. The Court will GRANT HCC's motion for summary judgment. Applying the high degree of deference due to an arbitrator's decision, the Court finds it plausible to interpret "working hours" to restrict Union activity to "non-paid, off the clock time...." HCC's Concise Statement of Facts, Aug. 31, 1999, Exh. A, at 11.

In *Sheet Metal Workers' International Association v. Madison Industries,* 84 F.3d 1186 (9th Cir.1996), the Ninth Circuit summarized the applicable legal standard for reviewing an arbitrator's decision:

> Section 301 of the Labor Management Relations Act authorizes the district courts to enforce or vacate an arbitration ward entered pursuant to a collective bargaining agreement. 29 U.S.C. § 185(a). [citations omitted] However, judicial review of an arbitration award is both limited and highly deferential. [citations omitted] Thus, the court may not review the merits, but must ask only whether the grievance is governed by the contract and whether the parties agreed to arbitrate the dispute. [citations omitted] As long as the award "draws its essence" from the contract, meaning that "on its face it is a plausible interpretation of the contract, then the courts must enforce it." [citations omitted] The arbitrator's interpretation of the scope of issues submitted to him is

entitled to the same deference. [citation omitted]

*Sheet Metal,* 84 F.3d at 1190; *see also Barnes v. Logan,* 122 F.3d 820, 821–22 (9th Cir.1997) ("An award will not be set aside unless it manifests a complete disregard of the law. Thus, an award must be confirmed if the arbitrators even arguably construed or applied the contract and acted within the scope of their authority").

In this case, the Court is not persuaded that the arbitrator's decision is legally flawed. The Union contends that "a rule which prohibits solicitation or distribution of literature during nonwork time in nonwork areas is presumptively invalid unless special circumstances warrant the adoption of the rule," citing the Supreme Court's decision in *Magnavox* and the Ninth Circuit's decision in *NLRB v. Silver Spur Casino,* 623 F.2d 571 (9th Cir.1980). Union's Opposition, Dec. 8, 1999, at 5. The Union's argument is premised on the assumption that a paid break does not constitute "working hours" within the meaning of the CBA. However, after hearing testimony from the parties' representatives concerning the negotiations surrounding the CBA, as well as considering the plain language of the CBA, the arbitrator found under the facts presented that banquet employees always must be available. Thus, the arbitrator concluded that "working hours," as used in the CBA, included paid breaks. The Court finds that this decision makes a "plausible interpretation of the contract" and draws its "essence" from the contract.

The Court is not persuaded that the arbitrator's decision "manifests a complete disregard for the law." *Barnes,* 122 F.3d at 821. As discussed in *United Technologies,* the Supreme Court's decision in *Magnavox* focused on "the unions' power to consent to the total elimination of either distribution or solicitation." 706 F.2d at 1263. However, partial limitations on union solicitation were expressly upheld in *United Technologies.* 706 F.2d at 1263–64 (upholding limitations on union activity

that were limited to when an employee was being paid during his shift). In the instant case, the arbitrator expressly found no prohibition on conducting Union activities before or after an employee's shift. The arbitrator further distinguished the instant case from *Magnavox* by noting that banquet employees must be continuously available for duty after punching in. Thus, the Court disagrees with the Union's argument and finds that *Magnavox* is inapposite because there has been no complete elimination of Union activities on HCC's premises. Therefore, the arbitrator did not erroneously apply the law.

The Union also relies on the Ninth Circuit's decision in *Silver Spur Casino*, which stated: "Since 'working time is for work,' a rule prohibiting employee solicitation and distribution of literature during work time is presumed to be valid. On the other hand, 'the time outside (work), whether before or after work, or during luncheon or rest periods, is an employee's time to use as he wishes without unreasonable restraint....'" *Silver Spur Casino*, 623 F.2d 571, 582 (9th Cir.1980). However, the Court finds that the arbitrator's decision is consistent with *Silver Spur Casino*. First, there is no indication in *Silver Spur Casino* that the employees were being paid during their lunch or rest periods. Second, and more importantly, the arbitrator expressly found that banquet employees must be available at all times during their shifts to perform their duties. Thus, this interpretation of the CBA appears to strike an "appropriate balance between [the] organizational rights of employees and the rights of employers to control their businesses." *Id.* at 582. The Court reiterates that the Second Circuit's decision in *United Technologies* expressly approved similar union-negotiated limitations on the time and place of union solicitation that did not completely ban union activity. *See United Technologies*, 706 F.2d at 1263–64.

Finally, and in the alternative, even if the arbitrator did mistakenly apply the law, the Court finds that this would constitute a mere error of law and would be an insufficient basis for refusing to enforce an arbitrator's award. *See Barnes*, 122 F.3d at 825 (noting that confirmation of an arbitrator's decision "is required even in the face of erroneous misinterpretations of the law"). Thus, summary judgment in favor of HCC is appropriate.

### *CONCLUSION*

For the foregoing reasons, the Court GRANTS Defendant's Motion for Summary Judgment.

IT IS SO ORDERED.